IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SHIRLEY ABRAHAM | § | |
| v. | § | CIVIL ACTION NO. 6:11-CV-610 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On November 11, 2011, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

**I.     HISTORY**

On November 14, 2007, Plaintiff filed a Title XVI application for supplemental security income benefits. *See* Transcript ("Tr.") at 15 (Administrative Law Judge ("ALJ") decision). She alleged disability beginning on December 1, 2003. *Id*. The claim was denied initially on March 25, 2008, and upon reconsideration on June 28, 2008. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on November 21, 2008. *Id*. at 15, 24-43 (hearing transcript). Plaintiff appeared and testified, represented by counsel. *Id*. In addition, impartial vocational expert witness Wendy P. Klamm also testified. *Id*.

The ALJ issued an unfavorable decision on July 2, 2009, *id*. at 12-23, and Plaintiff sought review. On August 5, 2011, the Appeals Council denied review. Tr. at 5. Therefore, the ALJ's

decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff then filed the instant action for review by this Court.

## II. STANDARD

Title XVI of the Act provides for supplemental security income for the disabled. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302, n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 416.920(b)-(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

The additional procedure for evaluating a mental impairment is set forth in 20 C.F.R. § 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical

4

findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. *Id*., § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id*., § 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three categories above, and is "none" in the fourth category, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*., § 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. *Id*., § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." *Id*., § 416.920a (d)(3), (e)(2).

## III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his July 2, 2009, decision:

The claimant has not engaged in substantial gainful activity since November 14, 2007, the application date (20 C.F.R. § 416.971 *et seq*.).

The claimant has the following severe impairments: obesity; chronic pain in the lumbar spine; insulin-dependent diabetes mellitus; dysthymic disorder, late onset; and generalized anxiety disorder (20 C.F.R. § 416.920(c)).

5

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925 and 416.926).
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can occasionally climb (but never ladders, ropes or scaffolds). She cannot work around dangerous, moving machinery or at unprotected heights. She has moderate limitations in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting.
>
> The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969a).
>
> The claimant has not been under a disability, as defined in the Social Security Act, since November 14, 2007, the date the application was filed (20 C.F.R. § 416.920(g)).

Tr. at 17, 18, 20, 22, 23. The ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. at 23.

## IV. DISCUSSION AND ANALYSIS

Plaintiff alleges that her ability to work is limited by "Type II dibetes, kidney problems, [high blood pressure]." Tr. at 101 (undated Disability Report - Adult) (amended from all capitals). She alleges that "My diabetes causes me to get dizzy. I'm afraid I might fall down. My left leg gives out very easily which causes further problems." *Id.* (amended from all capitals.) On or about March 2008, she alleges that her conditions have changed, specifically, "obesity - headaches - feet swell - sinus problems - congestion - depression - diabetes - HBP." Tr. at 130 (undated Disability Report -

Appeal).  She asserts that she has new limitations including "poor vision - teeth bother her."  *Id*.  She asserts no further changes in a subsequent report.  Tr. at 152.

At the administrative hearing, Plaintiff testified that she had not worked since she filed her disability application and had not tried to do so.  Tr. at 26-27.  She testified that her diabetes kept her from working.  *Id*. at 27.  She further testified that she could perform the representative job of cafeteria attendant, which was a possibility identified by the vocational expert, "if it's not a whole lot of walking."  *Id*. at 29.  She stated her feet and ankles swell and her leg goes numb if she stands up too long.  *Id*.  She feels tingling and itching, related to her diabetes.  *Id*.  If she sits down, she testified she has to keep her feet elevated or they swell.  *Id*.  She was equivocal about the values of her blood sugars, stating "it's very rarely normal; runs 166 to 2-something, sometime it get up to 3."  *Id*.  However, she also testified that she tries to eat fruits, vegetables, fish and chicken, but that "when that runs out I mean, I have to eat what I got, you know."  *Id*. at 30.  She had recently checked her blood pressure, which read 142 over 90.  *Id*.  If she stands more than "[a]bout 15 to 30 minutes," she feels sharp pains down her legs and hips, and she has to sit down until "it cools down, and get back up."  *Id*. at 31.  If she sits more than 15 to 30 minutes, she feels sharp pains up her lower back, so she spend the day getting up and down.  *Id*.  She sleeps all right when she takes her medication, which makes her sleepy.  *Id*. at 32.

Plaintiff further testified she does not go out much but goes shopping with her cousin, who does most of the walking.  *Id*.  She cares for her mentally retarded son, who cannot talk.  *Id*.  She has problems with balancing and has arthritis in her hands.  *Id*. at 34-35.  She has trouble bending and straightening her fingers.  *Id*. at 35.  She also complained of tendinitis in her left hip.  *Id*.  She also

7

swells up from her diabetes, and sometimes it makes it hard for her to breathe. *Id*. at 36. Her vision is blurry sometimes and her eye veers off. *Id*. at 38. She also has headaches. *Id*.

She also testified she had been taking antidepressants for "a long time" for anxiety, mood swings, crying and depression. *Id*. at 39. She stated she is 5'2" tall and, after some consideration, testified that she weighs "270-something." *Id*. at 40-41.

Plaintiff asserts two issues: (1) the ALJ failed to cite the correct severity standard or provide evidence that the correct severity standard was used at Step Two, creating legal error that requires remand (Pltf Brf at 1, 10); (2) the ALJ's credibility findings were not supported by substantial evidence (*id*. at 1, 13).

### A. ALJ's Credibility Determination

Addressing Plaintiff's second contention first, she asserts that the ALJ's determination of her credibility was not supported by substantial evidence.

The ALJ, as opposed to the Court, is the fact finder and may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). As the Fifth Circuit has determined,

> It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (per curiam) (internal citations omitted). It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To

rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163. The ALJ must consider subjective evidence of pain, but it must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren*, 925 F.2d at 128-29; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir.1989); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability.").

An ALJ must follow a two-step process in determining the credibility of a plaintiff's subjective claims: first, the ALJ must determine whether there is an impairment that reasonably produced the symptoms of which the plaintiff complains. *Salgado v. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008) (per curiam) (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (1996)). Here, the ALJ determined that Plaintiff has the severe impairments of obesity; chronic pain in the lumbar spine; insulin-dependent diabetes mellitus; dysthymic disorder, late onset; and generalized anxiety disorder. Tr. at 17.

Second, if such an impairment(s) is identified, the ALJ must then consider the plaintiff's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how they affect the plaintiff's ability to do basic work. This requires the ALJ to make a finding of the credibility of the plaintiff's statements about the symptoms and their functional effects. *Salgado*, 271 Fed. Appx. at 459 (citing SSR 96-7p). A non-exclusive list of factors to be considered in making the second determination include: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6)

measures other than treatment the claimant uses to relieve pain or other symptoms [ ]; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Wilson v. Astrue*, 2010 WL 1566748, at *10 (N.D. Tex. Mar. 19, 2010) (quoting SSR 96-7p, 1996 WL 374186, at *3); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). However, though an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005).

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. at 21. In making this statement, the ALJ compared Plaintiff's written and testimonial descriptions of her symptoms and limitations to the RFC he had determined and found them not credible to the extent they conflicted with the RFC. However, the ALJ based his determination of RFC on the reports of the state agency non-examining physician and psychiatrist who filed reports on her Physical Residual Functional Capacity Assessment (Randal Reid, M.D., Tr. at 236-43), and Psychiatric Review Technique and Mental Residual Functional Capacity Assessment (Leela Reddy, M.D., Tr. at 218-31 and 232-34, respectively). He did review some of the factors listed above, but focused primarily on Plaintiff's reported activities of daily living, some aspects of consultative examining physician Dr. Zapata's report (Tr. at 206-10), and the non-examining state agency physicians' reports.

As noted above, the ALJ's physical RFC determination was based on Dr. Reid's non-examining physician's Physical RFC Assessment; in turn, that was based in large part on Dr. Zapata's consultative examiner's report and perhaps to some extent on the progress notes from the Gregg County Health Department, *see, e.g.*, Tr. at 166-205. The ALJ's determination of Plaintiff's credibility also appears to be based largely on the Physical RFC Assessment and portions of Dr. Zapata's consultative report.

Plaintiff's objection to the ALJ's credibility determination turns on certain subjective evidence of her physical symptoms and limitations, compared to the physical capabilities portion of the RFC. For example, Plaintiff testified that she cannot stand or walk very long and that her legs swell and become numb; she cannot sit very long due to her back pain; she has trouble with manipulation; and her vision is blurred and affected by an eye that veers. None of those conditions or limitations are reflected in the ALJ's determination of RFC. The ALJ addressed some of these points, noting, for example, that Dr. Zapata measured her bilateral hand grip as normal. Tr. at 21. However, he also found that she had a "full, bilateral manual dexterity." *Id*. at 20. He did not cite objective medical evidence, nor is there anything in the record to support, this affirmative statement that contradicts Plaintiff's testimony of the effect of her arthritic hands.

Dr. Zapata diagnosed Plaintiff with likely impingement syndrome of the left shoulder, Tr. at 210, and specifically found on examination that the range of motion of her left shoulder is "about fifty percent in all directions and every time she tries to move her left shoulder she kind of makes faces and states she has pain." Tr. at 209. He also documented Plaintiff's difficulty in using her left arm and, for example, putting her clothes on. *Id*. at 208. However, Dr. Reid opined, in contradiction to the examining physician's testing, that Plaintiff has no manipulative limitations, including the ability to reach in all directions. Tr. at 230. That is wholly aside from any colorable question of manual

11

dexterity. The ALJ did not take Dr. Zapata's finding into consideration when analyzing Plaintiff's subjective evidence of difficulty in manipulation.

The ALJ additionally found that Plaintiff "is capable of walking or standing approximately 6 hours a day, and sitting approximately 2 hours a day. She can also sit most of the time with some pushing and pulling of arm or leg controls." Tr. at 20. This finding is apparently based on Dr. Reid's opinion that Plaintiff could stand and/or walk a total of about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) without limitation other than as for lift and/or carry (which was found to be 20 pounds occasionally and 10 pounds frequently). Tr. at 237. However, Dr. Zapata found on examination that there is a "definite visible swelling in both lower extremities from the both knees down," making it difficult to find pulses in both feet. Tr. at 209. He also found she has "very poor balance" and Plaintiff could not walk on her heels; Dr. Zapata therefore would not let her attempt to walk on toes, in tandem, or squat down. *Id*. He reported Plaintiff's statement that she has "a very difficult time in walking three to four hundred yards at a normal pace because of the pain in both knees and her lower back radiating to the left lower extremity." Tr. at 207-08. Although the latter observation is based on Plaintiff's self-reporting, Dr. Zapata appears to have given it credence in his report. None of these findings is consistent with the ability to stand and walk six hours a day, or to operate foot controls as described.

Both Dr. Reid and the ALJ considered and discounted Plaintiff's complaints of her vision based on Dr. Zapata's visual acuity test revealing that she has uncorrected 20/50 vision bilaterally. *See* Tr. at 21, 243. In fact, Dr. Reid opined she has no visual limitations, a position apparently taken by the ALJ as well. *Id*. However, Dr. Zapata's visual acuity finding was based simply on a Snellen eye chart, not a more sophisticated ophthalmologist's test, Tr. at 209, and it does not take into account any effect from the "very obvious left eye divergent strabismus," or offset eye, that Dr. Zapata documented. *Id*.

In fact, he recorded that the divergent strabismus is getting worse and Plaintiff "virtually depends on her right eye visual field." *Id*. at 208.

The ALJ also observed that "[t]he claimant testified that her son is mentally retarded and cannot speak; therefore, it is reasonable to infer that Ms. Abraham is physically able to perform many exertional and postural activities." Tr. at 21. There is no basis for a finding that the ability to help a family member communicate equates to the ability to perform physical activities.

In sum, the Physical RFC Assessment by Dr. Reid does not appear to have taken all of Dr. Zapata's findings into consideration, undermining the ALJ's reliance on it.

Finally, although this is not dispositive, during the administrative hearing, the ALJ asked a few precursor questions of Plaintiff, then abruptly examined the testifying vocational expert. Without having obtained Plaintiff's subjective testimony, the ALJ presented the vocational expert with a fully developed RFC (the same RFC stated by Dr. Reid and that the ALJ included in his written decision). The RFC included the ability to perform light work with the same postural limitations and mental limitations as stated in the decision, and asked the vocational expert if there were jobs the Plaintiff could perform under that RFC. *See* Tr. at 27-28. The vocational expert responded that representative jobs such as cafeteria attendant and laundry classifier were available. *Id*. at 28. It was only after that testimony that the ALJ took Plaintiff's subjective testimony of symptoms and limitations; however, the ALJ did not amend his RFC description in any way after her testimony. Taken in conjunction with the observations above, that at least presents the appearance that the RFC was established without considering Plaintiff's testimony. Taken alone, that point is not sufficient to warrant remand. However, there are sufficient issues outlined above to inform the conclusion that Dr. Reid's Physical RFC Assessment, on which the ALJ based his determination, did not fully take Dr. Zapata's clinical

findings into account. Therefore, the credibility analysis built thereon falls short and does not constitute a determination supported by substantial evidence.[1]

For that reason, the Court will reverse the Commissioner's final decision and remand for further consideration of Plaintiff's credibility.

### B. The ALJ's Step Two Determination

Because of the findings above, it is not necessary to determine whether the ALJ properly assessed the severity of all of Plaintiff's impairments.

It is accordingly

**ORDERED** that the Commissioner's final decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with the opinion herein.

So **ORDERED** and **SIGNED** this **5** day of **August, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

---

[1] Further, both jobs identified by the vocational expert require frequent reaching and light level work, which may require lengthy standing or walking or operation of foot controls. *See* DICOT 361.687-014, 1991 WL 672991 (G.P.O.) (Classifier) and DICOT 311.677-010, 1991 WL 672694 (G.P.O.) (Cafeteria Attendant). Absent a more-considered determination of Plaintiff's credibility and her subjective evidence, it is not apparent that she has the ability to perform one or more of these activities.